**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ADEYEMI B., Plaintiff | : | CIVIL ACTION |
| v. | : | |
| FRANK BISIGNANO, Commissioner of the Social Security Administration, Defendant | : | NO. 25-6722 |

# MEMORANDUM

CAROL SANDRA MOORE WELLS
UNITED STATES MAGISTRATE JUDGE July 31, 2026

Adeyemi B. ("Plaintiff") seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner of the Social Security Administration ("the Commissioner"), denying his claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. He has filed a brief in support of his request for review, and the Commissioner has responded to it.[1] For the reasons set forth below, Plaintiff's request for review is denied.

## I. PROCEDURAL HISTORY[2]

On April 24, 2023, Plaintiff applied for DIB, alleging that his disability commenced on July 13, 2022. R. 17. The claim was denied initially and upon reconsideration; therefore, Plaintiff requested a hearing. *Id.* On December 16, 2024, Plaintiff appeared for a telephonic hearing, before Margaret M. Gabell, Administrative Law Judge ("the ALJ"). *Id.* Plaintiff, represented by an attorney and vocational expert Irene Montgomery ("the VE"), testified at the hearing. *Id.* On

[1] Plaintiff failed to file a Reply to the Commissioner's Response by the deadline and failed to request an extension to do so. *See* Doc. No. 8.
[2] The court has reviewed and considered the following documents in analyzing this case: Plaintiff's Brief and Statement of Issues in Support of his Request for Review ("Pl. Br."), the Brief of Defendant ("Resp."), and the administrative record. ("R.").

February 27, 2025, the ALJ, using the sequential evaluation process ("SEP") for disability,[3] issued an unfavorable decision. R. 17-30. The Social Security Administration's Appeals Council denied Plaintiff's request for review, on September 26, 2025, making the ALJ's decision the Commissioner's final determination. R. 1-3. Plaintiff presently seeks judicial review, and the parties have consented to this court's jurisdiction, pursuant to 28 U.S.C. § 636(c)(1).

## II. FACTUAL BACKGROUND

### A. Personal History

Plaintiff, born on February 2, 1972, was 50 years old on his alleged disability onset date, and 53 years old at the time of the administrative hearing. R. 35. He has two minor children and lives with his adult daughter, who helps ensure that he takes his medication. R. 49.

### B. Plaintiff's Testimony

At the February 27, 2025, hearing, Plaintiff testified that he was previously self-employed

---

[3] The Social Security Regulations provide the following five-step sequential evaluation for determining whether an adult claimant is disabled:

> 1. If claimant is working, doing substantial gainful activity, a finding of not disabled is directed. Otherwise proceed to Step 2. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).
>
> 2. If claimant is found not to have a severe impairment which significantly limits her physical or mental ability to do basic work activity, a finding of not disabled is directed. Otherwise proceed to Step 3. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).
>
> 3. If claimant's impairment meets or equals criteria for a listed impairment or impairments in Appendix 1 of Subpart P of Part 404 of 20 C.F.R., a finding of disabled is directed. Otherwise proceed to Step 4. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).
>
> 4. If claimant retains the residual functional capacity to perform past relevant work, a finding of not disabled is directed. Otherwise proceed to Step 5. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).
>
> 5. The Commissioner will determine whether, given claimant's residual functional capacity, age, education and past work experience in conjunction with criteria listed in Appendix 2, he is or is not disabled. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g).

as a salesperson, selling and repairing phones from 2012 through 2019. R. 51. Before that, he worked as an integrated medical transport driver, lifting and transporting individuals who used wheelchairs and stretchers. R. 51-52. Plaintiff was involved in a motor vehicle accident while driving for work on July 13, 2022, resulting in a concussion and injuries to his back and knees. R. 52-53.

Plaintiff suffers from headaches and seizures. He testified that he sometimes experiences a headache before having a seizure. R. 51. He goes to the hospital every time he has a seizure. R. 58. His first seizure occurred on September 12, 2022, when he was at home. R. 53. Plaintiff also testified that he had breakthrough seizures[4] in March 2023 and on May 18, 2023, after failing to take his medication. R. 61. Additionally, Plaintiff had a seizure in January 2024 while driving home from his daughter's basketball game, resulting in an accident in which his car flipped over. R. 54. As a result of these injuries, Plaintiff has difficulty maintaining his balance and can walk only as far as the corner store before taking a break. R. 55. He keeps a walker in the trunk of his car for use three to four days while recovering from a seizure. *Id.* Due to the two seizure-related accidents, Plaintiff's driver's license is under medical suspension; he must obtain medical clearance before he can drive again. R. 54.

Plaintiff testified that, during the six months preceding the hearing, he experienced approximately one seizure per week. R. 53-54. He doesn’t remember anything when he has a seizure. R. 56. He also experiences headaches every two days. R. 53. Whenever he has a headache, he must lie down. R. 54. Plaintiff believes his seizures are triggered by headaches, stress, lack of

[4] A breakthrough seizure is a seizure that occurs after a period of seizure control and can be triggered by several factors including missed medication, sleep deprivation, stress, and drug and alcohol use. *Breakthrough Seizure Guide*, Epilepsy Foundation of Michigan (last visited June 25, 2026), chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://epilepsymichigan.org/wp-content/uploads/2025/06/Breakthrough_Seizure_Guide.pdf.

sleep, and high blood pressure. R. 58.

To treat his seizure disorder, Plaintiff was originally prescribed 500 milligrams of Keppra every morning and 1,000 milligrams every night. R.53. At the time of the hearing, his dosage had increased to 1,000-1,500 milligrams every morning and 1,500 milligrams every night. *Id.* He also takes medication for anxiety, which makes it difficult for him to concentrate. R. 55. Plaintiff testified that he has a medical marijuana card and smokes about one joint per day to help him fall asleep. R. 58.

On a typical day, Plaintiff attends physical therapy, cleans his home, and conducts administrative tasks. R. 56. He has been approved for a home health aide. *Id.* His girlfriend cooks his meals and drops them off. *Id.* When Plaintiff is not recovering from a seizure, he bathes and dresses himself. R. 57. He takes an Uber to and from his doctor's appointments. R. 58.

Plaintiff testified that he can be forgetful. R. 59. Plaintiff testified that he failed to take his medication either because he forgot to do so or because he mistakenly believed that he had already taken it. R. 61. During the month preceding the hearing, Plaintiff implemented a pill-sorting system where he places his daily morning and nighttime doses of anxiety and seizure medicine in bottles to ensure that he does not miss a dose. R. 62.

C. Vocational Testimony

The VE classified Plaintiff's past jobs as driver, medical transport, medium,[5] semi-skilled,[6] performed at a heavy[7] level and self-employed salesperson, light,[8] semi-skilled. R. 62. The ALJ

[5] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c).

[6] "Semi-skilled work is work which needs some skills but does not require doing the more complex work duties." 20 C.F.R. §§ 404.1568(b).

[7] "Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds." 20 C.F.R. §§ 404.1567(d).

[8] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal

asked the VE to consider a person having Plaintiff's age, education and work experience who is limited to light work and: occasional postural movements, no climbing ladders, ropes, or scaffolds, no exposure to unprotected heights, occasional climbing of ramps and stairs, no driving, no operating moving machinery, simple, routine tasks, simple decisions, tolerating only occasional changes in a workplace, and frequent interaction with coworkers, supervisors, and the public. R. 63. The VE opined that, although this individual could not perform Plaintiff's past work, they could perform three, light, unskilled[9] jobs: (1) cashier, 120,000 positions in the national economy; (2) marker, 140,000 positions in the national economy; and (3) housekeeper in an institutional setting, 110,000 positions in the national economy. R. 63-64.

The VE opined that the following conditions would be work preclusive: missing two to three days of work per month, having difficulty completing a normal workweek and leaving work sixty minutes early once per week, or being off task and unproductive 15-20% per day because of lapses in focus and concentration. R. 65.

**THE ALJ's FINDINGS**

In her decision, the ALJ issued the following findings:

1. [Plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2026.

2. [Plaintiff] has not engaged in substantial gainful activity since July 13, 2022, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. [Plaintiff] has the following severe impairments: post-concussive syndrome, seizure disorder, headaches, disorders of the spine, hypertension, and anxiety disorder (20 CFR 404.1520(c)).

---

of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b).

[9] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength . . . [a] person does not gain work skills by doing unskilled jobs." 20 C.F.R. § 404.1568(a).

> 4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).
>
> 5. After careful consideration of the entire record, I find that [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he can perform postural activities occasionally but cannot climb ladders, ropes, or scaffolds and can climb ramps and stairs occasionally; cannot work at unprotected heights; can do no driving; cannot operate moving machinery; and is limited to simple routine tasks, simple decisions, and occasional changes in the workplace with frequent interaction with coworkers and supervisors and the public.
>
> 6. [Plaintiff] is unable to perform any past relevant work (20 CFR 404.1565).
>
> 7. [Plaintiff] was born on February 2, 1972, and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563).
>
> 8. [Plaintiff] has at least a high school education (20 CFR 404.1564).
>
> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [Plaintiff] is "not disabled," whether or not the [Plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 10. Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform (20 CFR 404.1569, 404.1569a).
>
> 11. [Plaintiff] has not been under a disability, as defined in the Social Security Act, from July 13, 2022, through the date of this decision (20 CFR 404.1520(g)).

R. 20, 26, 35, 37.

## IV. DISCUSSION

A. Standard of Review

Judicial review of the Commissioner's final decision is as follows. The Commissioner's findings of fact will not be disturbed if they are supported by substantial evidence. *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007); *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999). Substantial evidence is not "a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation omitted). While it is more than a mere scintilla of evidence, *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019), it may amount to less than an evidentiary preponderance. *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). Overall, this test is deferential to the ALJ, and the court should affirm the ALJ's findings of fact that are supported by substantial evidence, even when the court, acting *de novo,* might have reached a different conclusion. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986), *cert. denied*, 482 U.S. 905 (1987). Indeed, the court is not permitted to weigh the record evidence itself. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). By contrast, the Commissioner's legal conclusions are subject to *de novo* review. *Poulos*, 474 F.3d at 91; *Schaudeck*, 181 F.3d at 431.

B. Burden of Proof in Disability Proceedings

To be found "disabled" under the Act, Plaintiff must carry the initial burden of demonstrating that he is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). Plaintiff may establish a disability through: (1) medical evidence meeting one or

more of the serious impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1; or (2) proof that the impairment is severe enough that Plaintiff cannot engage in any type of "substantial gainful work which exists in the national economy." *Heckler v. Campbell*, 461 U.S. 458, 460 (1983); 42 U.S.C. § 423(d)(2)(A).

Under the first method, Plaintiff is considered *per se* disabled by meeting one of the "listed" impairments. *Heckler*, 461 U.S. at 460. Under the second method, Plaintiff must initially demonstrate that a medically determinable impairment prevents him from returning to his past employment. *See Brown*, 845 F.2d at 1214. If Plaintiff proves that his impairment results in functional limitations to performing his past relevant work, then the burden of proof shifts to the Commissioner to prove that work does in fact exist in the national economy which Plaintiff can perform given his age, education, work experience and residual functional capacity. *See Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019); *Poulos,* 474 F.3d at 92.

C. Review of the Administrative Law Judge's Decision

Applying the sequential evaluation process, the ALJ determined that, although Plaintiff could not perform his past relevant work, he could perform other work and, hence, was not disabled. R. 17-29. Plaintiff disputes the ALJ's decision, arguing that the ALJ erred because she (1) discounted his seizure and headache symptoms based on medication noncompliance without explanation, and (2) improperly rejected RFC limitations contained in medical opinions by Drs. Stone and Weinstein, without reviewable explanations. Pl. Br. at 6-10. The Commissioner disagrees with Plaintiff's assertions of error. Resp. 4-5. Plaintiff's arguments fail.

1. The ALJ Properly Discounted Plaintiff's Reasons for Treatment Noncompliance

First, Plaintiff argues that the ALJ erred by discounting his seizure symptoms based on treatment noncompliance without meaningfully addressing the reasons he provided for failing to

comply with treatment.[10] Pl. Br. at 6. This argument fails, because the ALJ complied with Social Security Ruling ("SSR") 16-3p when evaluating Plaintiff's allegations regarding the intensity, persistence, and limiting effects of his seizure symptoms, and properly discussed and discounted Plaintiff's reasons for medical noncompliance.

Social Security Ruling 16-3p sets forth the process by which an ALJ evaluates an individual's impairment-related symptoms in the disability determination process. The two-step process for evaluating an individual's allegations of impairment-related symptoms is as follows: (1) the ALJ must determine whether there is an underlying medically determinable impairment that could reasonably be expected to produce the individual's symptoms;[11] and (2) the ALJ must evaluate the intensity and persistence of those symptoms to determine the extent to which they limit the individual's ability to perform work-related activities. SSR 16-3p, 2017 WL 5180304, at *2-3 (Oct. 25, 2017). "[A]n individual's statements of symptoms alone are not enough to establish the existence of a physical or mental impairment or disability." *Id.* at *2. Instead, the ALJ must consider the extent to which the individual's symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the record. *Id.* "[I]f an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence" the ALJ will determine that the individual's symptoms are "less likely to reduce his or her capacities to perform work-related activities." *Id.* at *8.

The ALJ must consider all the evidence when evaluating the intensity, persistence, and limiting effects of an individual's symptoms, including the following factors:

---

[10] While also asserts this argument for his headache symptoms, his arguments are limited to his seizure symptoms. Pl. Br. at 7. Therefore, the court will only address this argument pertaining to Plaintiff's seizure symptoms.

[11] Plaintiff does not challenge the ALJ's determination at Step 2, which is where the ALJ determined Plaintiff's medically determinable impairments.

> 1. Daily activities;
> 2. The location, duration, frequency, and intensity of pain or other symptoms;
> 3. Factors that precipitate and aggravate the symptoms;
> 4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
> 5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
> 6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
> 7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.
>
> …
>
> If there is no information in the evidence of record regarding one of the factors, we will not discuss that specific factor in the determination or decision because it is not relevant to the case. We will discuss the factors pertinent to the evidence of record.

*Id.* at *7-8.

The ALJ may also consider an individual's attempts to follow prescribed treatment when evaluating whether the intensity and persistence of his symptoms affect his ability to perform work-related activities. *Id.* at *9. "Persistent attempts to obtain relief of symptoms, such as increasing dosages and changing medications, trying a variety of treatments, obtaining referrals to specialists, or changing treatment sources," support a claimant's assertion that the symptoms are intense and persistent. *Id.* However, a claimant's failure to follow prescribed treatment that might improve the symptoms may support an ALJ's finding that the alleged intensity and persistence of the claimant's symptoms are inconsistent with the overall evidence of record. *Id.* The ALJ must also consider possible reasons why a claimant may not comply with prescribed treatment, including, but not limited to, an inability to afford treatment, religious beliefs that prohibit the treatment, or a mental impairment that prevents the claimant from understanding the need for consistent treatment. *Id.* at *10.

a. The ALJ Properly Discounted Plaintiff's Reasons for Noncompliance

Here, the ALJ considered Plaintiff's testimony that he experienced seizures because he forgot to take his medication and because his Keppra dosage changed over time. R. 59-62. Although forgetfulness is not among the factors listed in SSR 16-3p, Plaintiff advanced it in support of his assertions that, despite failing to take seizure medication, his seizure symptoms are intense, persistent and limit his ability to work, making it "pertinent" under the ruling. *See* SSR 16-3, at *7-8. The ALJ determined that Plaintiff's seizure symptoms were not as intense or persistent as he claims because Plaintiff's assertion that he missed doses of Keppra because he was forgetful was not supported by the record. R. 26-35.

The ALJ considered evidence that Plaintiff exhibited fair concentration and a linear, logical thought process during a mental status exam on May 19, 2023; a coherent and goal-directed thought process, intact attention and concentration, orientation to person, place, and time during a mental status exam on October 18, 2023; and a linear, logical thought process and appropriate concentration during a mental status exam on June 10, 2024. R. 24, 25, 27. The ALJ also observed that Plaintiff's recent and remote memory were intact during mental status exams on October 18, 2023, and March 13, 2024, although it was noted to be mildly impaired following a seizure on May 13, 2024. R. 29, 33, 671, 804, 1474. The ALJ's discussion of the evidence supports her decision to discount Plaintiff's assertion that he failed to comply with prescribed medication because he was forgetful.[12]

The ALJ also considered Plaintiff's testimony that he did not take Keppra as prescribed because his dosage changed over time. R. 29. However, the medical records show that, in fact, his dosage did not change until January 2024. R. 771, 1427. By that point, there had already been

---

[12] Likewise, Plaintiff's pill-sorting system, which he implemented during the month preceding the February 27, 2025, hearing, is not relevant to and does not explain his failure to take Keppra as prescribed from 2022 through 2024.

at least two documented instances of treatment noncompliance that occurred prior to the change in dosage. R. 28, 385, 519. The ALJ's discussion of the evidence sufficiently discounts Plaintiff's assertion that he failed to comply with prescribed medication because of changes in dosage.

b. The ALJ's Analysis of Plaintiff's Seizure Symptoms Complies with SSR 16-3p

The ALJ determined that Plaintiff's testimony regarding the intensity, persistence and limiting effects of his seizure symptoms was inconsistent with her evaluation of the record, which revealed that most of his seizures were due to failure to take prescribed treatment for unsupported reasons and because of alcohol and benzodiazepines use. R. 27-31. The ALJ discussed Plaintiff's first experienced seizure, on September 12, 2022. R. 28, 373. Plaintiff was hospitalized for two days and prescribed Keppra. R. 378. When discussing this evidence, the ALJ noted that Plaintiff had a history of alcohol use and a positive test result for benzodiazepine. R. 27. His wife further informed doctors that he drank alcohol every day, R. 383; medical records indicated that Plaintiff was informed that alcohol can "lower the seizure threshold and should be avoided or used in moderation." R. 374.

The ALJ also discussed Plaintiff's first breakthrough seizure, which occurred on February 13, 2023. R. 28. Plaintiff admitted that he had missed a dose of Keppra the prior evening. R. 385. Plaintiff confirmed that he had been drinking earlier that day, R. 535; his wife informed doctors that he was generally noncompliant with taking medication. R. 487. Next, the ALJ discussed Plaintiff's breakthrough seizure from May 18, 2023. R. 28. The ALJ noted that Plaintiff's wife informed emergency medical services that he had been binge drinking for two days prior to the seizure. *Id.* The ALJ discussed Plaintiff's wife's report to doctors that he frequently missed doses of his medication and usually had seizures after consuming alcohol. *Id.* The ALJ considered the fact that Plaintiff tested positive for benzodiazepines. *Id.* Further, medical records show that Plaintiff's doctor opined that his seizure activity was triggered by medical noncompliance and

alcohol use. R. 29, 519. Medical records establish that Plaintiff was again informed that alcohol can "lower the seizure threshold and should be avoided or used in moderation." R. 791.

The ALJ further discussed Plaintiff's breakthrough seizure of January 29, 2024. R. 28-29. Doctors discussed marijuana cessation with Plaintiff and corrected his medication regimen to taking 500 mg of Keppra twice per day. R. 28, 762, 777. The ALJ then discussed the breakthrough seizure dated April 16, 2024, which Plaintiff reported as a result of his failure to take medication, because he was feeling nauseous. R. 29. Overall, the ALJ properly reviewed all relevant evidence; therefore, her determination that Plaintiff's seizure symptoms were caused by medical noncompliance and/or drug and alcohol consumption is supported by substantial evidence.[13] R. 27-31.

<u>2. The ALJ Did Not Err Regarding Drs. Stone and Weinstein's Medical Opinions</u>

Plaintiff argues that the ALJ erred in evaluating the medical opinions of consultative examiner, Dr. Marielle Stone, and neurologist, Dr. Adam J. Weinstein. Pl. Br. at 8-10. These arguments lack merit.

An ALJ must analyze medical opinions for persuasiveness by explicitly considering supportability and consistency. 20 C.F.R. § 404.1520c(b)(2).[14] Supportability refers to the objective medical evidence and explanations the source himself or herself provides to justify the opinions. 20 C.F.R. § 404.1520c(c)(1). Consistency asks how consistent the objective medical and other evidence in the record is with the source's opinions. 20 C.F.R. § 404.1520c(c)(2). An RFC assessment is not a medical opinion but rather a determination reserved to the ALJ. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011).

[13] Plaintiff does not allege and the evidence in the record does not suggest that Plaintiff was prescribed benzodiazepines for any of his impairments.

[14] Other relevant factors which may be considered are: the source's relationship to the claimant, the source's specialization and other factors. 20 C.F.R. § 404.1520c(c)(3)-(5).

a. The ALJ Properly Discussed Dr. Stone's Medical Opinions

Plaintiff argues that the ALJ erred because she found Dr. Stone's opinion partially persuasive but failed to explain why she accepted certain opinions and rejected others. Pl. Br. at 8. This argument lacks merit.

The ALJ conducted a persuasiveness analysis of Dr. Stone's medical opinions, including her opinions that Plaintiff could never balance, could stand for only twenty minutes at one time, and could stand and walk for only three hours each during an eight-hour workday. R. 30-31, 652-55. The ALJ found that these opinions were "somewhat supported" by Dr. Stone's consultative exam but only "partially consistent" with the other evidence of record. R. 30-31. By finding Dr. Stone's opinions only partially persuasive, the ALJ necessarily accepted some of the opinions and rejected others. It is apparent that the ALJ rejected those opinions that were inconsistent with Plaintiff's ability to perform light work, because she explained that Dr. Stone's opinions were only "somewhat supported" and only "partially consistent" with the record, which supported a finding that Plaintiff "has the light residual functional capacity… with occasional postural activities and additional seizure precautions." R. 31. The ALJ was not required to use "magic words" when evaluating the doctor's opinions. *Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024). Accordingly, the ALJ did not err when evaluating Dr. Stone's medical opinions.

b. The ALJ did not err Regarding Dr. Weinstein's Medical Opinions

Plaintiff next asserts that the ALJ's explanation is "not reviewable as written" and does not permit the court to determine whether she rejected Dr. Weinstein's opinions for proper reasons, or whether she improperly omitted corresponding limitations from the RFC. Pl. Br. at 9. These arguments lack merit.

The ALJ conducted a persuasiveness analysis of Dr. Weinstein's medical opinions, and

Plaintiff challenges the ALJ's rejection of the doctor's opinions, R. 32-33, that Plaintiff would require unscheduled breaks of indeterminate frequency and length, would need to lie down or sit quietly during those breaks, and would likely be absent from work more than four times per month. Pl. Br. at 9. The ALJ found that Dr. Weinstein's opinions were "somewhat supported" by his explanations and "partially consistent" with the other evidence of record to the extent they supported a prohibition on driving. R. 32-33. She accepted Dr. Weinstein's opinions that Plaintiff is unable to drive because of his seizures. *Id.* However, she concluded that "Dr. Weinstein's limitations are overstated given that headaches are rarely mentioned in the medical evidence of record." *Id.*

Like the ALJ's analysis of Dr. Stone's medical opinions, the ALJ's evaluation of Dr. Weinstein's opinions is sufficiently reviewable. It is apparent that the ALJ credited Dr. Weinstein's opinions insofar as they were consistent with a driving restriction, but found that they overstated the severity of Plaintiff's headache symptoms. Plaintiff neither challenges the consistency or supportability factors, nor argues that the ALJ committed legal error or ignored evidence. His reliance on the ALJ's summary of his testimony regarding his headaches and the ALJ's finding that headaches constituted a severe impairment at step two are, in essence, an invitation for the court to reweigh the evidence and arrive at a different conclusion. That is not the Court's role. *See Rutherford*, 399 F.3d at 552. Accordingly, the ALJ did not err regarding her discussion of Dr. Weinstein's medical opinions.

An implementing order and order of judgment follow.